IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW J. SMITH, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 21-cv-567-NJR |
| MENARD CORRECTIONAL CENTER, JOHN DOE #1, and JOHN DOE #2, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Matthew J. Smith, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Smith alleges Defendants failed to protect him from an attack by his former gang and were deliberately indifferent to the injuries he suffered from the attack, all in violation of the Eighth Amendment. Smith seeks monetary damages and injunctive relief.

The case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Smith makes the following allegations in the Complaint (Doc. 1): On August 1, 2019, Smith signed into protective custody after being kicked out of his gang. While in protective custody, he was sent to segregation on two occasions for disciplinary violations (*Id*. at p. 6). The first time because of hooch and tattoos (*Id*.). The second time because he made and hid three shanks prior to his entry into protective custody (*Id*.). Because he was sent to segregation, his protective custody status was revoked (*Id*.). Smith maintains his protective custody should not have been revoked for an incident that occurred prior to his protective custody placement. During his second time in segregation, on November 18, 2019, he was attacked by a member of his old gang resulting in a broken nose and gashes on his nose (*Id*.). Smith alleges the assault would not have happened if he had not been placed in a general population bullpen. Smith maintains that someone at Menard, the person who created the policy regarding the revocation of protective custody status, was responsible for failing to protect him from his former gang (*Id*. at p. 7). He identifies John Doe #1 as the protective custody supervisor (*Id*. at p. 1).

After the attack, he was seen by a nurse who recommended x-rays of his nose. Those x-rays were delayed for several weeks. When Smith finally obtained an x-ray of his nose, the nose was healed (*Id*. at p. 7). Due to the delay in receiving an x-ray, Smith maintains that his nose was not properly set and is now crooked. He was also told by nurse practitioner Zimmer that his x-rays showed a stable nose, but Smith believes this finding was a lie because his nose was swollen after the attack (*Id*. at p. 9). He does not

know who was responsible for his delay in medical treatment but identifies John Doe #2 as the medical director at Menard.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following two counts:

> **Count 1:** Eighth Amendment failure to protect claim against John Doe #1 (supervisor of protective custody), in his individual and official capacity, for implementing a policy requiring Smith to be removed from protective custody status while in segregation.
>
> **Count 2:** Eighth Amendment deliberate indifference claim against John Doe #2 (medical director) for delaying Smith's x-ray and lying about the x-ray results.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Smith states a viable failure to protect claim against John Doe #1 in both his individual and official capacity for the policy requiring Smith to be removed from protective custody while in disciplinary segregation. Smith alleges that the supervisor of protective custody implemented the policy which removed him from

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

3

protective custody and that placement in segregation allowed him to be attacked by his former gang members. As to his official policy claim, Smith must allege (1) "an express policy that, when enforced, causes a constitutional deprivation;" (2) "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law;" or (3) "plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Here, Smith alleges there was an express policy of removing protective custody inmates from protective custody when placed in disciplinary segregation. He also seeks injunctive relief for his claim. Thus, Count 1 shall proceed. To help identify John Doe #1 protective custody supervisor, the Court **ADDS** Anthony Wills (official capacity only) to the case for the sole purpose of responding to discovery aimed at identifying John Doe #1.

As to Count 2, Smith fails to identify any individual who actually caused the delay in his treatment. He does not indicate that John Doe #2 medical director delayed his treatment. He identifies Zimmer as the individual who lied about his broken nose, but he does not name him as a defendant nor does he allege Zimmer caused any delay in his treatment. Because Smith fails to identify anyone, either by name or John Doe status, that was responsible for the delay, he fails to state a claim in Count 2. John Doe #2 medical director is **DISMISSED without prejudice**.

To the extent Smith identifies Menard Correctional Center as a defendant, it is a division of the Illinois Department of Corrections, which is a state government agency,

and is not subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-71 (1989); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment). Menard Correctional Center is **DISMISSED with prejudice**.

### Pending Motions

Smith has filed a motion for class action status and the appointment of counsel (Doc. 3). But Smith's Complaint focuses solely on John Doe #1's failure to protect him. His Complaint fails to raise any allegations which would be suitable for a class action, and his requests for relief are related to his own protective custody. He has also not properly defined a potential class other than to say every inmate in protective custody. Thus, he has not met the standard for certifying a claim and his motion for class action (Doc. 3) is **DENIED**. *See* Federal Rule of Civil Procedure 23(a); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

As to his request for counsel, Smith has not identified any attempts to contact counsel on his own, only indicating that if the case proceeds as a class action, he will need counsel. Because Smith has not sought counsel on his own, the Court **DENIES** his motion (Doc. 3). Should he choose to move for recruitment of counsel at a later date, the Court directs Smith to (1) contact at least **three** attorneys regarding representation *in this case* prior to filing another motion, (2) include in the motion the name and addresses of at least three attorneys he has contacted, and (3) if available, attach the letters from the attorneys who declined representation.

5

**Disposition**

For the reasons stated above, Count 1 shall proceed against John Doe #1. Count 2 and John Doe #2 are **DISMISSED without prejudice**. Menard Correctional Center is **DISMISSED with prejudice**. Anthony Wills (official capacity only) is **ADDED** to the case for the sole purpose of responding to discovery to identify John Doe #1. Smith's motion for merit review (Doc. 12) is **DENIED as moot**.

The Clerk of Court shall prepare for Defendant Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment as identified by Smith. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on him, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Smith, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

As Anthony Wills is only in the case for purposes of identifying John Doe #1, *he does not need to file a formal Answer*. Once he enters the case, he will receive further instructions from the Court on responding to discovery aimed at identifying John Doe #1.

If judgment is rendered against Smith, and the judgment includes the payment of costs under Section 1915, Smith will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Smith is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 18, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the defendant of your lawsuit and serve him with a copy of your complaint. After service has been achieved, the defendant will enter an appearance. This will likely take at least **60 days** from the date of this Order, but it is entirely possible that it will take **90 days** or more. When the defendant has appeared, the Court will enter a Scheduling Order containing important information on deadlines, discovery (including identifying the John Doe defendants), and other procedures. **Plaintiff is advised to wait until counsel has appeared for the defendant before filing any motions**, to give the defendant notice and an opportunity to respond to those motions. Motions filed before defendant's counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**