IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MATTHEW J. SMITH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-00567-MAB |
| | ) |
| **KRISTA ALLSUP,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment filed by Defendant Krista Allsup (Doc. 54; *see also* Doc. 55). For reasons discussed below, the motion is granted.

### BACKGROUND

Plaintiff, Matthew Smith, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that prison officials at Menard Correctional Center ("Menard") violated the Eighth Amendment when they failed to protect him from members of his former gang (Doc. 13, Doc. 55). More specifically, Plaintiff alleges that he signed into protective custody on August 1, 2019, after being kicked out of his gang (Doc. 13, p. 2). But his protective custody was revoked when he was sent to segregation for disciplinary infractions on two occasions (Doc. 13, p. 2). On November 8, 2019, during his second stint in segregation, a member of his former gang attacked him, resulting in a broken and gashed nose (*Id.*). Following a threshold review of the complaint under 28 U.S.C. § 1915A, Plaintiff was

permitted to proceed on the following claim:

> **Count 1:** Eighth Amendment failure to protect claim against John Doe #1 (supervisor of protective custody), in his individual and official capacity, for implementing a policy requiring Plaintiff to be removed from protective custody status while in segregation.

Doc. 13, p. 3).

Plaintiff later identified John Doe #1 as Krista Allsup (Doc. 27). Allsup filed her motion for summary judgment on July 24, 2023 (Doc. 55). Allsup provided the requisite notice to Plaintiff advising him of the consequences of failing to respond to the motion for summary judgment and the necessity of supporting his response with affidavits or other documentary evidence (Doc. 56). *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982).

According to the IDOC's website, Plaintiff Matthew Smith (inmate #B86629) (https://idoc.illinois.gov/offender/inmatesearch.html), was released on parole on July 21, 2023, which was three days before Allsup filed her motion for summary judgment. The certificates of service on Allsup's filings indicate that she served the motion for summary judgment, supporting memorandum, and notice on Plaintiff by mailing them to him at Menard Correctional Center (*see* Docs. 54, 55, 56). We now know he was no longer at that address to receive the documents. Plaintiff did not ever notify the Court of his change in address, despite being told more than once at the outset of the case that he was under a continuing obligation to keep the Court and opposing counsel informed of any change in his address (Docs. 4, 13). To date, Plaintiff has not filed a response in

opposition to the motion for summary judgment.

## FACTS

Plaintiff Matthew Smith was an inmate within the Illinois Department of Corrections ("IDOC") housed at Menard (*see* Docs. 38, 55). On August 1, 2019, he requested to be placed in protective custody, stating "[he] was told to check in by a group of inmates because [he] testified in court against someone," and that if "[he] didn't go to [protective custody] [he'd] be 'f***** up.'" (Doc. 55, p. 27).

The next day, Plaintiff was interviewed by Allsup, a caseworker at Menard (Doc. 55, pp. 17, 27). In this interview, Plaintiff explained that he was out on the yard when he was approached by several gang members from his former gang (the KMS) who told him they knew he had testified against someone in order to get his sentence reduced (*Id.* at p. 29). They threatened to assault him if he stayed in general population and told him to check into protective custody (*Id.*). Plaintiff specifically identified three inmates by name, none of whom were Daniel "Danny" Quainter (*Id.* at p. 29).[1] Allsup recommended that a decision on Plaintiff's protective custody placement be deferred to Internal Affairs ("IA") and Intelligence (*Id.* at pp. 18, 29). A few days later on August 8th, an Intelligence/IA Officer determined that Plaintiff had provided adequate information to justify protective custody and recommended Plaintiff's continued placement (*Id.* at pp. 27, 29). The warden approved Plaintiff's placement recommendation that same day (*Id.* at p. 29).

On August 22, 2019, less than a month into his protective custody, Plaintiff

---

[1] This individual – Daniel Quainter – is the inmate who Plaintiff says attacked him and thus the basis for his failure to protect claim.

received a disciplinary ticket for drugs and drug paraphernalia and contraband/unauthorized property (*Id.* at p. 54). This ticket resulted in a punishment of one month in segregation (*Id.* at p. 52). On September 1, 2019, Plaintiff filed a grievance in which he requested to be returned to protective custody upon release from segregation (*Id.* at pp. 39-40). In the grievance, Plaintiff stated that a KMS member, S***, spoke to him through a vent and told him that if either S*** or B*** B*** saw Plaintiff while in segregation, it "wouldn't be pretty" (*Id.*).² The grievance did not mention Daniel Quainter (*see id.*). The counselor responded approximately a week later and told Plaintiff that when he was released from segregation, he would not automatically be placed back into protective custody per the prison's policy, and he had to make another request for protective custody (*Id.*; *see also id.* at p. 17). Allsup had no role in reviewing or responding to this grievance (*Id.* at p. 18).

When Plaintiff was released from segregation, he did not request to be placed back in protective custody status (*see* Doc. 55, p. 18). Then on October 16, 2019, Plaintiff received another disciplinary ticket for dangerous contraband and received a year of segregation (*Id* at pp. 48–49, 51). On November 8, 2019, Plaintiff was escorted from segregation to the North 2 Health Care Unit to see a psychiatrist (*Id.* at p. 57). While Plaintiff was waiting to be seen, he got into a fight with inmate Daniel Quainter (*Id.* at p. 47). On November 25, 2019, following the fight, Plaintiff filed a grievance (*Id.* pp. 59–60). In his grievance, Plaintiff claimed to have identified Quainter as a member of KMS during

---

² The KMS members' names were redacted in the grievance (Doc. 55, pp. 39, 40).

his protective custody interview with the Internal Affairs officers (*Id.*).

As a casework supervisor at Menard, Allsup supervised the delivery of counseling and case-management services for offenders housed at the facility (Doc. 55, p. 16). She is not a member of Internal Affairs, Intelligence, or Investigations at Menard (*Id.*). She additionally has no role in creating policies and procedures for IDOC or Menard, nor does she have any control over the placement of inmates at Menard (*Id.* at p. 18). According to Allsup, all policies and procedures for IDOC and Menard are and created by Executive Policy Administrators at the Central Office for IDOC located in either Springfield or Chicago, Illinois (*Id.* at p. 16; *see also id.* at pp. 19–26 (administrative directive explaining how IDOC policies and procedures are developed, reviewed, approved, and implemented).

## DISCUSSION

This Court's Local Rules specifically provide that a "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." SDIL-LR 7.1(c). Further, under Federal Rule of Civil Procedure 41(b), a court may dismiss an action with prejudice "if the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or any court order." FED. R. CIV. P. 41(b); *In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995) ("District courts possess the inherent authority to dismiss a case *sua sponte* for want of prosecution as part of the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal quotations and citations omitted).

In this instance, the Court elects to construe Plaintiff's failure to respond to the motion for summary judgment as an admission of the merits of the motion. However, this does not automatically result in judgment for the movants. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). *See also Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir. 1993) ("Nowhere in Rule 56 is the granting of summary judgment authorized as a sanction for failing to file a timely response to a motion for summary judgment."). The Court still must ascertain whether Allsup has demonstrated that judgment is proper as a matter of law. *Keeton*, 667 F.3d at 884 (citing *Raymond*, 442 F.3d at 608).

Summary judgment is proper when the moving party "shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). When considering a motion for summary judgment, the Court must review the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). "Only if the court can say, on that sympathetic reading of the record, that no finder of fact could reasonably rule in the unsuccessful movant's favor may the court properly enter summary judgment against that movant." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778

F.3d 593, 603 (7th Cir. 2015).

As previously mentioned, Plaintiff is proceeding on a failure to protect claim against Allsup. Under the Eighth Amendment's prohibition of cruel and unusual punishment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This does not mean, "that a constitutional violation occurs every time an inmate gets into a fight." *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023). Rather, prison officials violate this duty only if they are deliberately indifferent to a prisoner's welfare. *Id*. Plaintiff must show that Allsup had "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991).

Plaintiff alleged in the complaint that he would not have been attacked on November 18, 2019, had his protective custody not been revoked (Doc. 1, p. 6; Doc. 13, p. 2). He claimed that the person who created the policy regarding the revocation of protective custody status was responsible for failing to protect him from his former gang, and he identified Allsup as the protective custody supervisor (Doc. 1, pp. 1, 7; Doc. 13, p. 2). However, the undisputed evidence is that Allsup had nothing to do with the creation of the policy at issue. In fact, Allsup played no role in creating any policies or procedures at Menard. She was merely a casework supervisor. There is also no evidence Allsup was responsible for implementing the policy in Plaintiff's case; that is, she was not the one who actually removed Plaintiff's protective custody designation.

Additionally, there is no other basis for holding Allsup liable for failure to protect

Plaintiff from the assault on November 8, 2019. For example, there is no evidence that Allsup knew Daniel Quainter was a gang member or otherwise posed a threat to Plaintiff. There is no evidence that Allsup played any role in scheduling Plaintiff to be seen in the health care unit, in transporting him there, or in monitoring the inmates waiting in the health care unit. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."); *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) ("[T]o be held liable under section 1983, a supervisory official must have had personal involvement in the constitutional deprivation, essentially directing or consenting to the challenged conduct.").

The only evidence before the Court suggests that Allsup's role in the protective custody process and her involvement with Plaintiff's incarceration generally was extremely limited—she conducted an initial interview with him in August 2019 regarding his request for protective custody. That's it. Allsup recommended the decision regarding Plaintiff's request be deferred to Internal Affairs. In other words, she determined there might be something to Plaintiff's request and it needed to be further evaluated. During the next steps of the process, Plaintiff was granted protective custody. There is no indication that Allsup's decision put Plaintiff in any kind of danger. To the extent that any prison official is responsible for Plaintiff being attacked in the health care unit on November 8, 2019, the Court cannot discern any reason why it would be Allsup. There is simply no evidence that she was involved in any capacity, or that her decisions contributed in any way to Plaintiff being attacked.

On these facts, no reasonable jury could find Allsup was deliberately indifferent to a substantial risk posed to Plaintiff, and she is entitled to summary judgment.

## CONCLUSION

The motion for summary judgment filed by Defendant Krista Allsup is **GRANTED.** Plaintiff's claims against this Defendant are **DISMISSED** with prejudice and the Clerk of Court is **DIRECTED** to enter judgment in her favor and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: November 29, 2023**

s/ Mark A. Beatty<br>
**MARK A. BEATTY**<br>
**United States Magistrate Judge**

## NOTICE

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30- day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiffs chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement of his prison trust fund accounts. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).